UNITED STATES v. ARROW UPHOLSTERY CO., INC.

No. 7793.—

Entry No. 1904.

Second Division, Appellate Term

(Decided February 8, 1950)

*David N. Edelstein,* `Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellant.
*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges; RAO, J., not participating

LAWRENCE, Judge: This is an application for review of the decision and judgment of the trial court filed under the provisions of section 501 of the Tariff Act of 1930 (19 U. S. C. § 1501) and is limited to reappraisement 133765–A. The merchandise involved consists of furniture frames imported from Italy.

At the trial, counsel for the respective parties agreed that there was no foreign, export, or United States value for this merchandise, and the trial court adopted as the proper basis of appraisement the cost-of-production formula, as found in section 402 (f) of said act (19 U. S. C. § 1402 (f)), and held that the entered values represented such cost of production. The merchandise was "Appraised at invoice unit values plus 8⅓% less inland freight Lentate-Genoa (packing included);" on the statutory basis of cost of production.

The trial court found that the entered values represented the cost of production of the merchandise, whereas the United States contended below and likewise here that the appraised value properly represents the cost of production. It is the contention of the appellant that the trial court erred in entering judgment holding that the entered values represented the cost of production and in not finding and holding that the appraised value represented the cost of production.

The only evidence offered by either party was an affidavit (collective exhibit 1), executed by the manufacturer and shipper of these furniture frames, which reads as follows:

That I am the sole proprietor of this firm and I reside at Lentate-Birago, near Milan, Italy.

That my factory manufactures wood furniture frames.

That my firm is in business in manufacturing furniture frames for over four years.

That I have had and have at the present time the personal charge of the technical and commercial ends of my firm and I am personally familiar with the commercial transactions concluded by my firm.

That I have personal knowledge of the costs of all material necessary for the manufacturing of furniture frames in question. That I also have personal knowledge of everything of the usual expense and benefits that form part of the costs of said frames. This information is derived from the fact that among my other duties I am the one who is in charge to arrive at the cost of sale to understand personally all the elements of said costs which enter in the price of sale of said wooden furniture frames.

That I include in the said cost of production the types in question which are covered by our Consular Invoice of July 1938 to the Arrow Upholstery Co. Inc. of New York City, and that the costs of production have been taken from our books and conform with registrations. I am, therefore, including a schedule of the various furniture frames which are included in the above mentioned invoice, with all the elements of the cost of production.

As stated by the trial court:

The schedule [accompanying the above affidavit] is divided into columns which show for each item (identified by description and number) the following information according to the captions: "Price of Sale," "Cost of Mat'l.," "Cost of Prod.," "Gen. Exp.," "Packing & Transportation fob Genoa," "Profit," and, again, "Total Cost of Sale."

The cost-of-production statute, section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)), reads as follows:

Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

It will be noted that the affidavit, collective exhibit 1, *supra*, fails to state the profit which ordinarily is added, in the case of merchandise

of the same general character as the particular merchandise under consideration, by other manufacturers or producers in the country of manufacture or production who are engaged in the production of merchandise of the same class or kind.

Counsel for the defendant below (appellant herein) pointed out to the trial court that the profit as shown by collective exhibit 1 is the profit made by the exporter on the identical frames here involved, and urged that this does not meet the statutory requirement of an addition for profit "equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind."

The trial court disposed of this contention in the following language:

In the case at bar there is no evidence as to the item of profit save the evidence of the profit of the manufacturer of the merchandise here involved, which, it appears, exceeded the statutory minimum as to each item of furniture frames covered by the schedule in collective exhibit 1. I see no reason why the plaintiffs should be required to make an express disclaimer that they had any evidence with respect to the profits ordinarily made by other manufacturers of merchandise of the same general character as that here involved, for I do not believe that the plaintiffs can be reasonably expected to prove facts which by their very nature are beyond their knowledge or control, which is ordinarily the case as to profits made by other manufacturers. The facts of business and commercial life are proper subjects for judicial notice, and I take judicial notice of the fact that except under extraordinary circumstances evidence as to the profit ordinarily added by other manufacturers would not be available either to the importer, who, as plaintiff, has the burden of proof before this court, or to the manufacturer or exporter from whom the importer bought the particular merchandise and who is his natural source of information.

\* \* \* \* \* \* \*

Section 402 (f) sets up standards for the elements of cost of production, and the costs, expenses, and profits of the particular manufacturer are some substantial evidence of each of those elements.  *Cottman & Co.* v. *United States,* 20 C. C. P. A. (Customs) 344, T. D. 46114, and *United States* v. *Henry Maier,* 21 C. C. P. A. (Customs) 41, T. D. 46378.

In view of the foregoing, I hold that the evidence of the elements of cost of production represented by collective exhibit 1, together with the record as made, established a *prima facie* case in favor of the plaintiff, as to the items of frames covered by the said collective exhibit 1 and identified therein, which *prima facie* case shifted the burden of going forward with the evidence to the defendant, and in the absence of rebutting evidence the plaintiffs must prevail as to such items.

This construction of section 402 (f) (4), *supra,* with regard to the addition for profit, would be sound if it were provided therein that the addition should be equal to the profit which ordinarily is added by the individual manufacturer or producer. However, Congress did not so write the statute and there are compelling reasons for construing it otherwise, as will appear, *infra.*

The mere fact that the profit added by the manufacturer of the merchandise here involved exceeded the statutory minimum as to each item of furniture frames covered by the schedule in collective exhibit 1 does not, in our opinion, justify the construction placed upon said section 402 (f) (4) by the trial court. Had it been the intention of the Congress to limit the profit provided for in said section 402 (f) (4) to that which was "not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision," it would seem that the statute might well have ended there, thus eliminating the further provision for profit—

* * * equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Under the statute as written, and contrary to the views expressed by the trial court, we see no reason why the plaintiff (appellee herein), if it was unable to secure evidence of the profit ordinarily added by producers in the country of manufacture of the same class or kind of merchandise, should not be required to make a disclaimer that it had, or was able to secure, any evidence with respect to the profits ordinarily made by other manufacturers of merchandise of the same general character as that here involved. The record in this case contains no suggestion that the facts as to the profit added by other manufacturers are of such a nature that they are beyond the knowledge of or not ascertainable by the manufacturer of the instant merchandise. On the other hand, if the plaintiff was able to ascertain the profit added by its competitors, the statute very definitely requires that it present the information as an element to be considered in arriving at the cost of production of the merchandise.

Of course, if the manufacturer or producer of the instant merchandise had no competitor, or if such manufacturer or producer had competitors but was unable to secure from them or other sources information as to the profit ordinarily added by them, because such information, as stated by the trial court, was ordinarily of a strictly confidential nature, it would have been a simple matter to so state.

If we were to concur in the view expressed by the trial court that proof by the plaintiff of profit made by the individual manufacturer or producer was sufficient to establish a *prima facie* case and shift the burden of going forward with the evidence to the defendant, the latter would be placed in the anomalous position of being compelled to establish facts which are implicit in the findings and return of value by the appraiser, which are presumptively correct.

A case very similar in its legal aspects to the one in issue herein was decided by our appellate court in *United States* v. *Henry Maier,*

18 C. C. P. A. (Customs) 409, T. D. 44679. The court was there dealing with the statutory cost of production, as provided in section 402 (e) of the Tariff Act of 1922, which is identical with the provisions of section 402 (f) of the act of 1930 with which we are here concerned. In that case the court had occasion to say with respect to the addition for profit described in said section 402 (e) (4)—

It will be observed that said subsection 4 provides for an addition for profit of an amount equal to the profit which ordinarily is added by manufacturers in the same country of the same class or kind of product. *It does not provide that an addition for profit may be made equal to the profit of the particular manufacturer who made the goods in question.* In this respect, therefore, the court below erred in its construction of the law and because of such error failed to give consideration to material and relevant testimony in the record on the matter of an allowance for profit. [Italics supplied.]

By reason of certain errors committed in the lower court, its judgment was reversed and the case remanded for further consideration. The case subsequently came before the appellate court in *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378. In that case the appellate court disagreed with the views of the lower court to the effect that the general expenses and usual profit of each individual concern is the criterion. In its opinion the court stated:

It would appear, therefore, that it was not the intent of Congress, when it enacted said section 206 [an analogous cost-of-production provision in the Antidumping Act of 1921], to limit the cost of production, in cases where said section was applicable, to the actual cost of production of the imported merchandise, including actual profit realized by the manufacturer, and we think a like constuction [sic] should be given to said section 402 (e) of the Tariff Act of 1922. In other words, as we construe said paragraph 4, it is not enough to establish what the ordinary profit of the manufacturer of the imported merchandise was, if merchandise of the same general character was produced and sold by others in the country of exportation, and the profit made thereon is reasonably ascertainable. If not so produced and sold by others, the profit ordinarily made by the manufacturer of the imported merchandise in producing goods of the same general character as the imported merchandise may be resorted to in arriving at the statutory cost of production. We have so held with respect to said section 206 of the Antidumping Act of 1921. *Cottman & Co.* v. *United States*, 20 C. C. P. A. (Customs) 344, T. D. 46114.

It is our view that there is no occasion for construing said paragraph 4 by eliminating any portion of it as unworkable, as indicated by the lower court, but that it should be reasonably construed to effectuate the apparent intent of Congress, viz, that the profits of the manufacturer of imported merchandise shall not be the sole criterion in the application of the statute, but where there is other evidence in the record, or available to the parties with respect to profits ordinarily made by other manufacturers of merchandise of the same general character as that imported, in the country of exportation, such evidence must be considered by the appraising officers and by the court upon reappraisement, and the amount of profit should be determined according to the weight of all the evidence bearing upon the subject.

In the case of *United States* v. *T. E. Ash et al.*, 23 C. C. P. A. (Customs) 360, T. D. 48211, in dealing with the question of the cost

of production of certain machines imported from Germany, and with particular reference to the item of profit under section 402 (f) (4) of the Tariff Act of 1930, our appellate court quoted from an affidavit in evidence in that case as follows:

The amount added by us for profit, over and above all other charges and cost elements, is 15%. We have every reason to believe, from general knowledge of manufacturing and trade practices, that the profit which we have added is approximately the same as would ordinarily be added by manufacturers or producers in Germany, engaged in manufacturing merchandise of the same class or kind. * * *

In holding the above statement as to the profit added by other manufacturers in Germany to be substantial evidence, our appellate court employed the following language:

It is clear, we think, from what has been said, that the Appellate Division of the Customs Court was of opinion that merchandise of the same general character as that here involved, but not "similar" thereto, within the purview of sections 402 (b) and (c), Tariff Act of 1922, and 402 (c) and (d), Tariff Act of 1930, was produced in Germany, and that the 15 per centum "profit," added by the importers in the case at bar, was "equal to the profit" ordinarily added by manufacturers in Germany of merchandise of the same general character as that here under consideration. That there is substantial evidence to sustain such a holding by the court, is evidenced by the excerpt from Exhibit 3, included in the court's opinion hereinbefore quoted. See *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, 50, 51, T. D. 46378.

In view of the foregoing, it is our considered opinion that section 402 (f) (4) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f) (4)) is mandatory and that the facts therein called for must be supplied or their nonexistence established by proof if merchandise of the same general character was produced and sold by others in the country of exportation. Of course, if it be established by competent proof that merchandise of the same general character is not produced or sold by other manufacturers, or if produced and sold that the profits could not be ascertained, then the profit ordinarily made by the manufacturer of the imported merchandise in producing goods of the same general character may be resorted to in arriving at the statutory cost of production. This mandate of the statute is not to be dispensed with by the court taking judicial notice of the fact—if it be a fact of which this court may properly take judicial notice—that evidence as to the profit ordinarily added by other manufacturers would not be available because of its assumed confidential nature.

The *Ash* case, *supra*, is an instance where importers were able to secure information as to the profit of their competitors which was in the form of evidence of the type and quality admissible in a court of law such as the United States Customs Court and the United States Court of Customs and Patent Appeals.

In view of the authorities referred to above, we are clearly of the opinion that the plaintiff below (appellee here) has failed to over-

come the presumption of correctness attaching to the decision of the appraiser, and we find as facts—

1. That the merchandise here involved consists of furniture frames which were imported from Italy.

2. That these furniture frames were entered at the invoice prices, less an item for inland freight, which prices, it is contended, represent the cost of production of the various items, and that they were "Appraised at invoice unit values plus 8⅓% less inland freight Lentate-Genoa (packing included)," on the basis of cost of production.

3. That the respective parties have agreed that there is no foreign, export, or United States value of the instant merchandise.

4. That cost of production is the proper statutory basis for determining the value of the merchandise in issue.

We conclude as matter of law:

1. That the proper basis for the determination of the value of the instant merchandise is the cost of production, as that value is defined in section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)).

2. That the cost of production of the instant merchandise is the appraised value thereof, as set forth in finding of fact No. 2, *supra*.

3. That the trial court erred in taking judicial notice that, except under extraordinary circumstances, evidence as to the profit ordinarily added by other manufacturers would not be available to the importer, manufacturer, or exporter, and even if the importer, manufacturer, or exporter did come into possession of such information, it would hardly be in the form of evidence of the type and quality admissible in a court of law such as the United States Customs Court.

4. That the judgment of the trial court is accordingly reversed.

Judgment will be entered accordingly.