(Reap. Dec. 8708)

A. N. DERINGER, INC. *v.* UNITED STATES

Entry No. A–4897.

(Order dated December 7, 1956)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector* and *William J. Vitale,* trial attorneys), for the defendant.

MOLLISON, Judge:   This appeal for reappraisement is before me on rehearing granted after decision was rendered by Chief Judge Oliver, which is reported as *A. N. Deringer, Inc.* v. *United States,* 34 Cust. Ct. 452, Reap. Dec. 8390.   In view of the excellent summary of the facts and the law applicable thereto set forth by Chief Judge Oliver in the opinion referred to, it will be unnecessary to repeat the details here in full.   Chief Judge Oliver found that the plaintiff, whose primary claim is for values based upon cost of production, had failed to offer sufficient evidence to overcome the presumption of correctness attaching to the values found by the appraiser; specifically, that the plaintiff had failed to establish that there was no foreign value for the merchandise.

The evidence shows that the doors involved were a patented article, the sole manufacturer of which in Canada was the exporter.   It also shows that, at the time of exportation of the doors here in issue, such doors were offered for sale in Canada for home consumption at three levels of trade, viz, by the manufacturer, by wholesalers or jobbers (hereinafter called "wholesalers"), to whom the manufacturer sold, and by lumber dealers (hereinafter called "dealers") who purchased from either the manufacturer or the wholesalers.   The dealers sold only to consumers.

The manufacturer offered the merchandise for home consumption to only two classes of trade, viz, certain wholesalers, selected on a territorial and warehouse space basis, and to dealers.   The offered prices to the dealers were list prices net and depended upon the quantity ordered, the highest price being charged for quantities of 1 to 9 doors and the lowest for carload lots.   The offered prices to the selected wholesalers was 10 per centum, less than the prices charged dealers for similar quantities.

The manufacturer did not offer the merchandise to *all* wholesalers, but only to selected wholesalers. Moreover, it clearly appears that the manufacturer imposed restrictions upon the resale of the doors by the wholesalers to whom it sold, limiting them to sales to dealers and only at prices which the manufacturer fixed.

Chief Judge Oliver found that, in view of the foregoing limitations and restrictions, there was no foreign value for the merchandise at the manufacturer's level of offers for sale, but, in view of the fact that the record failed to show that sales at the wholesalers' or dealers' levels were restricted, he held that the plaintiff had failed to eliminate statutory foreign value as the proper basis for appraisement of the doors in question.

Cited as authorities for this action are *Glanson Co.* v. *United States*, 31 Cust. Ct. 473, A. R. D. 33, and *United States* v. *H. W. Robinson & Co. et al.*, 19 C. C. P. A. (Customs) 274, T. D. 45436.

Moreover, the chief judge found, such evidence on the point as existed in the record indicated that wholesalers and dealers could freely offer the merchandise to all persons who wished to buy.

The chief judge granted a motion for rehearing, made on behalf of the plaintiff, the supporting affidavit in which indicated that evidence could be presented to establish that neither the wholesalers nor the dealers offered the merchandise for sale within the conditions laid down in the foreign value statute, section 402 (c) of the Tariff Act of 1930, as amended.

On the rehearing, with the obvious purpose of establishing that the appraised values had an erroneous basis, plaintiff called to the stand the appraiser at the port of entry, who testified that the merchandise was appraised at the manufacturer's selling price for 1 to 9 doors. Since the chief judge had ruled that no foreign value for the merchandise at the manufacturer's level existed, because of the limitations and restrictions imposed by the manufacturer on sales at its level, it seems clear that one of the findings upon which the appraised value rested was shown to be erroneous by this evidence.

Nevertheless, the plaintiff was under the burden of establishing the correct values of the merchandise and, for this purpose, called to the stand the sales manager of the Canadian manufacturer and exporter, who had previously testified in the case.

The testimony of this witness before me on the rehearing represents some amplification, some explanation, and, in some respects, a change from his prior testimony, which he stated was given in part under a misapprehension. Having examined the record and observed the witness personally, the court is satisfied that the purpose of counsel in interrogating the witness as to his prior inconsistent testimony was solely to elicit the truth and that the testimony given on the latest rehearing should be accepted as representing the evidence given by

the witness in the matter. No effort was made on the part of the defendant to offer evidence to contradict or controvert the same.

The evidence given by the witness was to the effect that, at the wholesalers' level, there were restrictions requested by the manufacturer and adhered to by the wholesalers in respect to (1) the class of purchaser to whom they could resell, and (2) the resale price. According to the evidence, the wholesalers limited themselves to sales to dealers and barred sales to consumers, including those who might have wished to purchase in wholesale quantities, such as contractors, builders, owners of public and private buildings, etc., and did not sell the doors at any prices lower or higher than those charged by the manufacturer in its sales to dealers.

Further, according to the evidence, dealers were bound to sell only to consumers and did not sell to anyone for resale.

It, therefore, appears that at the three levels at which merchandise such as that here involved was offered for sale in Canada such offers were accompanied by restriction as to resale, which barred their consideration as free offers for sale within the meaning contemplated by the valuation statute. *United States* v. *Heemsoth-Kerner Corp.*, 31 C. C. P. A. (Customs) 75, C. A. D. 252, and *United States* v. *Graham & Zenger, Inc.*, 31 id. 131, C. A. D. 262.

The facts set forth above compel a finding that no foreign value, as the term is defined in section 402 (c) of the Tariff Act, as amended, existed for merchandise such as that here involved. The evidence shows that the doors here involved were of a ventilated construction, which was patented, and that no other ventilated construction doors were made or offered for sale in Canada. Therefore, no foreign value for similar merchandise existed, nor, for that matter and for the same reasons, did an export or United States value for similar merchandise exist.

The record shows that the same situation as to restrictive sales practices obtained in the offer of the merchandise for sale in Canada for exportation to the United States and that at the two levels of trade at which it was offered for same in the United States, i. e., the wholesalers' and dealers', the sale restrictions applied. It, therefore, follows for the same reasons that no export value or United States value, as defined in the act, existed for such or similar merchandise, requiring recourse, for the valuation of the merchandise, to the cost of production portion of the statute, section 402 (f), which is quoted in full in the margin.[1]

---

[1] SEC. 402. VALUE.

\*     \*     \*     \*     \*     \*     \*

(f) Cost Of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the

On behalf of the plaintiff, there was offered evidence as to the elements of cost of production referred to in paragraphs (1), (2), and (3) of the statute, applicable to the present merchandise, which evidence does not appear to be seriously controverted on behalf of the defendant and certainly is nowhere contradicted.

With respect to the element of profit, provided for in paragraph (4), however, it appears that the evidence offered by the plaintiff has reference only to the profit made by the manufacturer and exporter of the merchandise at bar with respect to the line of patented doors here involved. Counsel for the defendant points out that the statute calls for an addition for profit—

* * * equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Counsel for the defendant cites in this connection the cases of *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378; *United States* v. *Malhame & Co.*, 24 C. C. P. A. (Customs) 448, T. D. 48911; and *United States* v. *Jovita Perez*, 36 C. C. P. A. (Customs) 114, C. A. D. 407. The gist of those cases is stated in the opinion of our appellate court in the *Maier* case to the effect that, in enacting the cost of production statute, it was the apparent intent of Congress—

* * * that the profits of the manufacturer of imported merchandise shall not be the sole criterion in the application of the statute, but where there is other evidence in the record, or available to the parties with respect to profits ordinarily made by other manufacturers of merchandise of the same general character as that imported, in the country of exportation, such evidence must be considered by the appraising officers and by the court upon reappraisement, and the amount of profit should be determined according to the weight of all the evidence bearing upon the subject.

As has been stated, the plaintiff herein offered evidence as to the item of profit only with respect to the profit made by the manufacturer and exporter of the doors here involved in the manufacture and sale of doors such as those here involved. Plaintiff relies upon

---

particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

the following testimony given by its witness as meeting the requirement stated in the excerpt from the *Maier* case, *supra*:

Q.   Are there any other manufacturers of doors of the same character as yours in Canada?—A.   No.

\*          \*          \*          \*          \*          \*          \*

Q.   And was that true during the months of December 1949, and January and February 1950?—A.   Yes.   (Tr. pp. 24–25.)

It will be noted that the exact wording of the statute calls for the profit which ordinarily is added in the case of "merchandise of *the same general character*" [italics mine] as that under appraisement, by "manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of *the same class or kind*" [italics mine].   Plaintiff relies upon the fact that the doors involved herein are patented articles "and only patentable because of their peculiar character" to exclude from consideration the profits made by other manufactuers of other doors in Canada.   The witness testified, on cross-examination, that there were other manufacturers of doors in Canada.

Applied to the situation at bar, the question then is, do the words "merchandise of the same general character" and "merchandise of the same class or kind" refer to doors generally, or, in the case of a patented article, are they limited to the particular patented door?

The writer is of the opinion that the language of the statute calls for evidence, if available, of the profits ordinarily added by other Canadian manufacturers of doors.   The words "same general character" and "same class or kind" have a group connotation which would appear to be wider in its application to the subject matter than the relatively narrow interpretation which plaintiff seeks. Certainly, it is broader in scope than the term "similar."

The instant doors are identified as interior doors, presumably for houses.   Any interior house door, for example, would be merchandise of the "same general character" or "of the same class or kind" as the particular patented interior house doors here involved.   It seems to the writer that had Congress wished to confine the profit to be added under section 402 (f) to that made in connection with merchandise *identical* with that under appraisement, it would have done so by appropriate language.   Apparently, Congress wished to broaden the base upon which the item of profit was to be found.

The writer deems it not amiss to refer to the fact that, in the case of *Arrow Upholstery Co., Inc., et al.* v. *United States,* 20 Cust. Ct. 442, Reap. Dec. 7589, he pointed out that information as to the profits ordinarily made by other manufacturers abroad of merchandise of the same general character as that imported would normally be beyond the knowledge of plaintiffs in this court, or beyond their ability to

produce in the form of competent evidence. This view, however, was rejected on appeal (*United States* v. *Arrow Upholstery Co., Inc.,* 24 Cust. Ct. 539, Reap. Dec. 7793), and it was held—

\* \* \* that section 402 (f) (4) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f) (4) is mandatory and that the facts therein called for must be supplied or their non-existence established by proof if merchandise of the same general character was produced and sold by others in the country of exportation. Of course, if it be established by competent proof that merchandise of the same general character is not produced or sold by other manufacturers, or if produced and sold that the profits could not be ascertained, then the profit ordinarily made by the manufacturer of the imported merchandise in producing goods of the same general character may be resorted to in arriving at the statutory cost of production.

To a like effect are the decisions of our appellate court in the *Maier* and *Perez* cases, *supra.*

In the opinion of the writer, the evidence shows that merchandise of the same general character as that here involved, viz, interior house doors, was produced and sold in Canada at or about the time of exportation of the instant merchandise, and the record fails to show either the profit ordinarily added in the case of that general character of merchandise by other Canadian manufacturers thereof, or that the same was not reasonably obtainable. Under such circumstances, under the *Maier, Perez,* and *Arrow* cases, *supra,* the profit added by the particular manufacturer in the case of the line of doors here involved cannot be accepted as *prima facie* evidence satisfying the statutory requirement as to profits, and it must be held that the plaintiff has failed to establish the statutory cost of production of the involved merchandise.

The court is not unmindful of the fact that, after its original submission for decision, this case has twice been restored to the calendar for further evidence. However, in view of the fact that it has been demonstrated that the basis upon which the value returned by the appraiser was made was erroneous, it is deemed that the interests of justice require that it be restored to the next Rouses Point calendar for the sole purpose of permitting the introduction of evidence by both parties with respect to the addition for profit called for by paragraph (4) of the cost of production statute, section 402 (f) of the Tariff Act of 1930.

Order will issue accordingly.